UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **R.F., a minor, by his Guardian Ad Litem, Sean Frankel,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**Delano Union School District,**<br><br>**Defendant.** | **1:16-cv-01796-LJO-JLT**<br><br>**MEMORANDUM DECISION AND ORDER DENYING MOTION FOR TEMPORARY RESTRAINING ORDER**<br>**(Doc. 5)** |

## I. INTRODUCTION

Plaintiff R.F., a minor, brings this action against Defendant Delano Union School District under the Individuals with Disabilities Education Act ("IDEA"). Plaintiff seeks a Temporary Restraining Order ("TRO")[1] and an order to show cause regarding a preliminary injunction compelling Defendant to provide behavioral and educational services consistent with Plaintiff's most recent implemented Individualized Education Program ("IEP") developed while he attended the Torrance Unified School District ("Torrance"). Defendant objects, arguing that Plaintiff has not made a sufficient showing to merit a TRO. For the reasons explained below, Plaintiff's motion for a TRO is DENIED.

## II. JUDICIAL NOTICE

Plaintiff asks that the Court take judicial notice of excerpts of the administrative record related to his due process hearing request and stay-put motion filed at the Office of Administrative Hearings

---

[1] Plaintiff initially filed this motion *ex parte*. Doc. 5 at 1. The Court determined that its decision making would be aided by the filing of an opposition, and permitted Defendant to file any such opposition. Doc. 7.

("OAH"). Doc. 5-2 at 1. Those portions were attached to the motion for TRO as Exhibits A through J. Defendant did not object to judicial notice, and cited to the administrative record excerpts as offered by Plaintiff. *See*, *e.g.*, Doc. 10 at 6 (citing to Exhibits C and F to Plaintiff's request for judicial notice). Pursuant to Federal Rule of Evidence 201(b)(2), the Court may take judicial notice of an administrative record as facts not subject to a reasonable dispute because they can be accurately and readily determined from a source whose accuracy cannot reasonably be questioned. *United States v. Wilson*, 631 F.2d 118, 119 (9th Cir. 1980) ("[A] court may take judicial notice of . . . the records of an inferior court."). The Court therefore grants Plaintiff's request and hereby takes judicial notice of the submitted documents.

### III. BACKGROUND

Plaintiff, who is 12 years old, has an intellectual disability, autism, and a speech and language disorder. Doc. 5-1 at 5. Plaintiff's education goals and behavioral intervention plan address the following behaviors:

> Hand and object mouthing of substances, including non-edible objects;
> disruptions including throwing items, elopement, flopping down on the
> floor, hitting, reaching inside his pants, spitting, and grabbing with force
> the clothing of others.

*Id*. Plaintiff has had an IEP since September 7, 2007. *Id*. While Plaintiff was attending school at Torrance, his mother passed away. *Id*. Plaintiff's father decided to move Plaintiff to Delano, where Plaintiff's grandmother and uncle live and can provide additional childcare support; Doc. 5-7 at 2 (Declaration of Sean Frankel). *Id*. Plaintiff's last IEPs, which were agreed upon and implemented before he left Torrance, were dated May 5 and June 3, 2016. *Id*. These IEPs provided Plaintiff with a 1:1 aide for 1950 minutes per week and with supervision for 720 minutes per month from a Board Certified Behavior Analyst ("BCBA"). *Id*. Both the aide and the BCBA came from a certified non-public agency. *Id*. at 6.

Plaintiff enrolled in Delano Union School District on June 17, 2016. *Id*. Defendant held IEP

meetings on July 13 and August 5, 2016. *Id*. Defendant's proposed IEP reduced Plaintiff's BCBA supervision to 60 minutes per month and eliminated the 1:1 aide entirely. *Id*. Defendant's proposed BCBA supervision would not be provided by a certified non-public agency. *Id*. The IEP offered by Defendant was a 30-day interim plan, at the close of which Defendant intended to either adopt the Torrance IEP or to prepare a new IEP. Doc. 10 at 2. Plaintiff's family argued that the reduction in services would harm Plaintiff, and asked that Defendant continue to provide the services previously in place. Doc. 5-1 at 6. After rejecting Defendant's proposed IEP, Plaintiff re-enrolled at Torrance. Doc. 10 at 2. Plaintiff has attended Calle Mayor School in Torrance since the start of the 2016-2017 school year four days per week. Doc. 5-5 at 7 (Declaration of Jason Kashwer); Doc. 10 at 8. Plaintiff lives with his grandmother in Delano Thursday through Sunday. Doc. 5-7 at 2-3. Plaintiff's father intends that Plaintiff live with the relative and attend school in Delano full time as soon as Defendant provides services similar to those outlined in the Torrance IEP. *Id*.

Plaintiff filed for a due process hearing with the OAH on October 13, 2016. Doc. 5-1 at 6. The due process hearing is scheduled to begin on February 21, 2017. Doc. 1 at 7. Plaintiff filed a motion for stay-put on October 26, 2016, which the Administrative Law Judge ("ALJ") denied on November 11. Doc. 5-1 at 6. The ALJ found that Plaintiff's reliance on *T.B. v. San Diego Unified School District*, 785 F.3d 1067 (9th Cir. 2015), to support the proposition that the stay-put provision applies, was mistaken as *T.B.* is factually distinguishable from this matter. Doc. 5-11 at 2 (ALJ Decision). Additionally, the ALJ found that Plaintiff otherwise cited no persuasive authority in support of his position, while Defendant's position was consistent with the federal Department of Education's decision not to address stay-put in the context of inter-year transfers in its 2006 regulations. *Id*. at 3. The ALJ therefore concluded that Plaintiff was not entitled to stay-put. *Id*.

On November 28, 2016, Plaintiff filed with this Court a complaint seeking declaratory and injunctive relief from the stay-put decision. Doc. 1. On November 29, 2016, Plaintiff filed the instant motion. Doc. 5. On December 6, 2016, Defendant filed its opposition. Doc. 10. On that same day, the

Court issued an order granting Plaintiff leave to file a reply. Doc. 11. Plaintiff filed his reply on December 12, 2016. Doc. 12. On December 15, 2016, Defendant filed a motion seeking permission to file additional evidence in support of its opposition, or, in the alternative, seeking oral argument. Doc. 13.[2]

Plaintiff seeks an injunction compelling Defendant to provide him with 1950 minutes per week of 1:1 aide services and 720 minutes per month of BCBA supervision by a non-public agency. Doc. 5 at 2. Plaintiff also requests an order compelling Defendant to implement his last agreed to and implemented IEP. *Id*.

## IV. **STANDARD OF DECISION**

The IDEA provides federal funds to help state and local agencies educate children with disabilities while conditioning the funds on compliance with specific goals and procedures, primarily the obligation to provide a free appropriate public education ("FAPE"). 20 U.S.C. § 1412; *Board of Educ. of Hendrik Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179-80 (1982) (describing the genesis and primary provisions of IDEA). Under the IDEA, "[a]ny party aggrieved by the findings and decision made [by the hearings officer] . . . shall have the right to bring a civil action with respect to the complaint presented . . .which action may be brought . . . in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). Among the procedures mandated by IDEA is the development of a written IEP for each child with a disability. 20 U.S.C. § 1401. The IEP is crafted to meet the unique needs of each child with a disability by a team that includes a representative of the local educational agency, the child's teacher and parents, and, when appropriate, the child. 20 U.S.C § 1414(a)(5).

The stay-put provision of the IDEA mandates that, while a due process challenge is pending, a student is entitled to remain in his or her "then-current educational placement" unless the parents and the

---

[2] Defendant seeks to introduce the declaration of Wendy Terrazas. Doc. 12 at 3. Since Plaintiff's motion for TRO is denied by this order, Defendant's motion is moot.

4

state or local education agency otherwise agree. 20 U.S.C. § 1415(j). A stay-put order issued at the administrative level is a collateral order subject to interlocutory appeal. *A.D. ex rel. L.D. v. Hawaii Dept. of Educ.*, 727 F.3d 911, 913 (2013). The term "then-current educational placement" is not defined in the IDEA itself or in its legislative history. *N.D. ex rel. Parents Acting as Guardians Ad Litem v. Haw. Dep't of Educ.*, 600 F.3d 1104, 1114 (9th Cir. 2010). The Ninth Circuit has interpreted "then-current educational placement" to mean "the placement set forth in the child's last implemented IEP." *L.M. ex rel. Sam M. v. Capistrano Unified Sch. Dist.*, 556 F.3d 900, 902 (9th Cir. 2009). "Although the statute refers to 'educational placement,' not to 'IEP,' the purpose of an IEP is to embody the services and educational placement or placements that are planned for the child." *N.E. ex rel. C.E. v. Seattle Sch. Dist.*, ___F.3d___, Case No. 15-35910, 2016 WL 6803049, at *3 (9th Cir. Nov. 17, 2016). When the child's last implemented IEP cannot be implemented due to a change in circumstances, stay-put requires that the student receive a placement that, as closely as possible, replicates the last placement. *Van Scoy ex rel. Van Scoy v. San Luis Coastal Unified Sch. Dist.*, 353 F. Supp. 2d 1083, 1086 (C.D. Cal. 2005).

The IDEA and its enabling regulations are silent as to whether a child who transfers to a new district between school years is entitled to stay-put. According to federal Department of Education regulations, "[a]t the beginning of each school year, each public agency must have in effect, for each child with a disability within its jurisdiction, an IEP." 34 C.F.R. § 300.323(a). If a child transfers to and enrolls in a new different public agency within a state during a school year, the new public agency "must provide FAPE to the child (including services comparable to those described in the child's IEP from the previous public agency)" until the new public agency adopts the child's prior IEP or "develops, adopts, and implements a new IEP." 34 C.F.R. § 300.323(e). When a child relocates to a new public agency in a different state, the new public agency must provide a FAPE, including services comparable to those described in the child's prior IEP, until the public agency can conduct an initial evaluation to determine if the child is a child with a disability and determine the educational needs of the child, and create an IEP if necessary. 34 C.F.R. § 300.323(f). The Comments to the Department of Education's 2006

regulations state that the evaluation of a child who transfers to a school in another state is considered an initial evaluation made pursuant to 34 C.F.R. §§300.304 through 306, so stay-put does not apply. 71 Fed. Reg. 46,682 (2006); *see* 34 C.F.R. § 300.301 (defining an initial evaluation). In comparison, when a child transfers between public agencies within a state, no initial evaluation is required. *See* 34 C.F.R. 300.323(e). When promulgating the 2006 regulations, the Department of Education declined to clarify whether stay put applies to a child who transfers to a different public agency in a state between school years. 71 Fed. Reg. 46,682 (2006).

## V. ANALYSIS

### A. Mootness

The question of mootness is a jurisdictional matter, and "a federal court always has jurisdiction to determine its own jurisdiction." *U.S. v. Ruiz*, 536 U.S. 622, 628 (2002). Because the question of mootness is jurisdictional, it can be raised at any time by any party. Even in IDEA cases, where plaintiffs are particularly vulnerable, a party may raise facts rendering a case moot at any point, even if those facts were not raised during administrative proceedings. *See Honig v. Doe*, 484 U.S. 305, 318 (1988) (finding that a student's claim for relief under the Education of the Handicapped Act, IDEA's precursor, was mooted by a fact raised for the first time on appeal). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The question in deciding a mootness issue is "not whether the precise relief sought at the time the application for an injunction was filed is still available." *Sea-Land Serv., Inc. v. Int'l Longshoremen's and Warehousemen's Union*, 939 F.2d 866, 870 (9th Cir. 1991) (quoting *Northwest Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988)). Rather, "[t]he question is whether there can be any effective relief." *Sea-Land Serv.*, 939 F.2d at 1244-45.

Defendant argues that, because Plaintiff is attending school in Torrance and receiving the services set forth in Plaintiff's Torrance IEP, the request for a TRO is moot. Doc. 10 at 6, 7. Plaintiff responds that he need not remain in an inappropriate placement or sacrifice his hoped for remedy of

attending school in Delano Union School District with the full services which he believes are appropriate pending resolution of his claim against Defendant. Doc. 12 at 4-5.

There has been no specific description of Plaintiff's current status at Torrance, but Plaintiff appears to be currently receiving the services set forth in his most recent Torrance IEP. He is not, however, receiving those services in Delano Union School District, the school district in which Plaintiff's parent intends for him to attend school. Furthermore, he is only attending school four days per week, and is living with his grandmother from Thursday to Sunday. The purpose of stay-put is to prevent harm to a special needs student while a dispute regarding his or her education is ongoing. *N.D.*, 600 F.3d at 1111. Plaintiff remains enrolled in Delano Union School District, and intends to live full-time within that district. Doc. 12 at 5-6. He is subjected to the present harm of missing one day per week of instruction, as well as the burden of commuting between Torrance and Delano. This is a live controversy. The fact that Plaintiff chooses to make the commute rather than remain out of school is immaterial to the question of mootness. Plaintiff need not choose between a potentially inappropriate placement and sacrificing his hope of attending school in Delano. *See Sch. Comm. Of the Town of Burlington v. Dep't of Educ.*, 471 U.S. 359, 372-73 (1985) (the Education of the Handicapped Act, a precursor to IDEA, was not intended to cut off relief to a parent who moves a student from an unacceptable placement to a preferable one during the pendency of litigation). Therefore, since a live controversy exists as to whether stay-put entitles Plaintiff to receive behavioral and educational services from Defendant comparable to those listed in his Torrance IEP, this matter is not moot.

**B.      Temporary Restraining Order**

The standard for injunctive relief in an IDEA stay-put case is the "traditional preliminary injunction analysis."[3] *Johnson ex rel. Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180

---

[3] Plaintiff briefly states that the standard requirements for a preliminary injunction or TRO need not be satisfied because the stay-put for which IDEA provides is equivalent to injunctive relief. Doc. 5-1 at 8-9. This standard applies when a Plaintiff

(9th Cir. 2002). The standard for issuing a TRO is identical to that of a preliminary injunction. *NML Capital, Ltd. v. Spaceport Sys. Int'l, L.P.*, 788 F. Supp. 2d 1111, 1117 (C.D. Cal. 2011). In order to merit a TRO, a plaintiff must establish that: (1) he or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) an injunction is in the public interest. *Winter v. Nat Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit follows a version of the "sliding scale" approach to preliminary injunctions which it has labeled the "serious questions" test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the serious questions test, a strong showing of hardship to the plaintiff might "offset a lesser showing of likelihood of success on the merits" so long as serious questions are raised as to the merits, there is a likelihood of irreparable injury, and the injunction is in the public interest. *Id*. at 1134-35. A TRO or preliminary injunction is an extraordinary remedy, and is never awarded as a matter of right but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. A TRO is "an extraordinary and drastic remedy." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (per curiam) (citation omitted). It is granted only if there is a true emergency which requires "preserving the status quo and preventing irreparable harm." *Granny Goose*

---

makes a motion for stay-put directly with a reviewing court. *See Joshua A. ex rel Jorge A. v. Rocklin Unified Sch. Dist.*, 559 F.3d 1036, 1037 (9th Cir. 2009). The Ninth Circuit has explained that, when the motion presented to the district court "is for a preliminary injunction that affects a stay-put invocation, not the stay-put invocation itself" the four-factor preliminary injunction test applies. *N.D.*, 600 F.3d at 1112. There has been some inconsistency in determining when to apply the familiar four-factor test and when an automatic preliminary injunction is required. *See*, *e.g.*, *D.G. ex rel. P.G. v. San Diego Unified Sch. Dist.*, 132 F. Supp. 3d 1224 (S.D. Cal. 2015) (finding that a student was entitled to an automatic preliminary injunction when appealing an ALJ's denial of stay-put). Given the Ninth Circuit's explanation in *N.D.*, the fact that both parties applied the four-factor test, and the procedural posture here wherein Plaintiff is seeking injunctive relief following the denial of stay-put by the ALJ, the Court applies the four-factor analysis here. This is without prejudice to further briefing on this issue in connection with future motions practice.

*Foods, Inc. v. Bhd. Of Teamsters and Auto Truck Drivers Local No. 70*, 415 U.S. 423, 439 (1974).

The Court addresses each of the four *Winter* factors in turn.

### 1. Likelihood of Success on the Merits

Plaintiff argues that he is likely to succeed on the merits because stay-put applies and Plaintiff's "then-current educational placement" is his most recently implemented Torrance IEP. Doc. 5-1 at 9-10. He contends that, when a student transfers from one school district to another within the same state between school years, and a dispute arises with the new district regarding the student's IEP, the IEP which was in effect at the student's previous school is the then-current educational placement for the purposes of stay-put. *Id*. at 10-11. IDEA's assurance that a school district cannot alter an IEP over the parents' objection would be undermined if the prior IEP did not remain in effect for students transferring between school years, Plaintiff asserts. *Id*. at 12-13. Plaintiff argues that the Ninth Circuit's recent decision in *N.E. ex rel. C.E. v. Seattle School District*, __F.3d__, No. 15-35910, 2016 WL 6803049 (9th Cir. Nov. 17, 2016), controls and mandates a result in his favor. Doc. 5-1 at 11-12.

*N.E.* involved a request for stay-put made on behalf of a disabled student who transferred districts within a state between the end of one school year and the start of another. In his original district, the student had an IEP consisting of two parts. One part continued through the end of the school year in which the IEP was made, while the other would start at the beginning of the next school year. Before the school year began, the new district offered the student an IEP that was similar to the second part of his prior IEP. The student's parents objected to the new IEP, and sought stay-put for the student to be placed in a program similar to the first part of his previous IEP, contending that the first part of the IEP was the student's "then-current educational placement." While acknowledging the artificiality of referring to a then-current placement between school years, the Ninth Circuit noted that is has consistently "interpreted 'current educational placement' to mean 'the placement set forth in the child's last implemented IEP.'" *N.E.*, 2016 WL at *3. In *N.E.*, the last implemented IEP was the two-part program instituted at the student's prior school. *Id*. The two-stage IEP was the intended setting in

which the student would begin the next school year, and the IEP had been implemented during the prior school year. *Id*. at 4.  Accordingly, the Ninth Circuit held that the two part IEP created at the student's original school was the student's current educational placement at the time he sought stay-put.

Defendant argues that *N.E.* is distinguishable from the facts in this case.  Defendant mistakenly states that the court in *N.E.* "determined that the student's stay-put placement was the placement adopted by the new school district."  Doc. 10 at 7.  In fact, while the stay-put placement the Ninth Circuit found to be proper was "similar to the one embodied in stage two" of the previous IEP, *N.E.*, 2016 WL at *2, and the plaintiff in that case did "not argue that [the proposed IEP] differed meaningfully from the second stage," *id*. at *2 n. 3, the court explicitly found that "[s]tage two of the [earlier] IEP . . . was [the student's] stay-put placement."  *Id*. at *4.  The Ninth Circuit's analysis centered on determining which part of the earlier IEP was the student's then-current placement, not whether the IEP offered by the defendant in that case was the proper placement.  The similarity between the second stage of the earlier IEP and the later IEP was not a factor in the decision.  Defendant's argument that *N.E.* is inapplicable is not convincing.

Taking into account the rationale in *N.E.*, which was issued subsequent to the ALJ's decision in this matter, it is likely that Plaintiff will prevail on the merits.  The current educational placement of a student with a disability is the placement set forth in the student's last implemented IEP.  The only IEP which was implemented at the time Plaintiff filed his due process hearing request and stay-put motion was the Torrance IEP.  Under Defendant's argument, an IEP which was never implemented would be Plaintiff's current educational placement.  Furthermore, the silence as to the effects of a student changing districts between school years in the federal Department of Education's regulations does not demand the inference that the Department intended to exempt such students from the protections of stay-put.  Also, the Department's explanation that stay-put does not apply for students who move from state to state does not suggest that the same rule applies for intra-state transfers.  The Department may have valid reasons for distinguishing an inter-state transfer from an intra-state transfer, including the

differences between educational standards and systems among the states. The Court declines to read into the Department's silence an intention to limit the essential protections of stay-put.

Defendant also argues that, since Plaintiff is currently residing with his father in Torrance, that is where he must attend school, and it is Torrance who is responsible for providing Plaintiff with a FAPE. Doc. 10 at 7. The State of California provides that "[n]otwithstanding [California Education Code § 48200], a pupil complies with the residency requirements for school attendance in a school district, if he or she is . . . [a] pupil who lives in the home of a caregiving adult that is located within the boundaries of that school district." Cal. Educ. § 48204(a)(5). Plaintiff's father asserts that Plaintiff intended to live with a caregiving relative who resided in within Delano Union School District, and provided copies of affidavits to that effect. Doc. 5-7 at 2-3. He also asserted that Plaintiff stays with those relatives three days out of the week, and intends to live there full time if Defendant provides acceptable services. *Id*. at 3. Moreover, Defendant has not made any assertion that Plaintiff is not enrolled in Delano Union School District. Defendant has not made a convincing showing that it has no responsibility to provide a FAPE for Plaintiff. For the aforementioned reasons, the Court finds Plaintiff likely to succeed on the merits.

**2.    Irreparable Harm**

Plaintiff contends that, if he is not provided with services comparable to those enumerated in his Torrance IEP, he will suffer irreparable harm. Doc. 5-1 at 14. He relies on the declaration of Dr. Shabani, who opines that the services offered by Defendant are insufficient given Plaintiff's disabilities and would result in regression and harm and be highly detrimental to him. Doc. 5-1 at 14; Doc. 5-3 at 9-11. He also argues that attending school in Torrance and living part of the week in Delano is a major burden on his family. Doc. 12 at 9. Plaintiff's father works full-time, and Plaintiff requires constant adult supervision due to his disabilities. *Id*. at 8. Plaintiff's relatives in Delano provide assistance, but the weekly driving between Torrance and Delano and constant change are difficult for Plaintiff. *Id*. at 9.

Defendant argues that, because Plaintiff is attending school in Torrance and is receiving the

services and placement in his last implemented IEP, Plaintiff will not suffer irreparable harm if not granted a TRO. Doc. 10 at 8. Even to the extent that Plaintiff is missing out on some services while shuttling back and forth between Delano and Torrance, Defendant contends the harm is not irreparable and could be remedied by compensatory services and education. *Id*. Defendant also argues that Dr. Shabani's declaration was conclusory. Doc. 10 at 8. Finally, Defendant contends that, since Plaintiff has never attended school in Delano Union School District, and re-enrolled at Torrance of his own volition, any harm suffered by Plaintiff is voluntary and speculative. *Id*. at 8-9.

Dr. Shabani's declaration, while not a full expert report, is far from conclusory. Dr. Shabani notes that he first met Plaintiff in April 2014, when Plaintiff was referred to Dr. Shabani's firm, the Shabani Institute, for assessments. Doc. 5-3 at 7. The Shabani Institute was contracted by Torrance Union School District to provide services to Plaintiff under terms of his IEP, and Dr. Shabani personally participated in Plaintiff's May 5, 2016, IEP meeting which created Plaintiff's last Torrance IEP. *Id*. Even though Dr. Shabani did not go into detail as to precisely how the contemplated reduction in services would harm Plaintiff, he provided sufficient concrete explanation to justify his opinion. His assertion that the reduced services in the IEP proposed by Defendant would likely injure Plaintiff is convincing.

However, the scenario Dr. Shabani considered is not what is before the Court at this point in time. Dr. Shabani's opinion was based on the premise that Plaintiff would be receiving the services set forth in Defendant's IEP. He did not consider or address whether Plaintiff's current situation, in which he is receiving four days per week of instruction and services in Torrance and is being driven to Delano to spend the remaining three days each week, is likely to cause harm. The situation has changed since Dr. Shabani offered his opinion in this matter, and consequently the opinion holds less weight.

Plaintiff is receiving the majority of the services contemplated in his IEP and is attending school. He is missing one day each week, and given the hardship to both Plaintiff and his family involved in his weekly commute, the situation does not appear sustainable. It is, however, stable. The purpose of a

TRO is to maintain the status quo and prevent any further deterioration until such time as a more considered decision can be made. *Granny Goose Foods*, 415 U.S. at 439. The parties and the Court could speculate as to whether Plaintiff might be harmed by the constant changes in his surroundings, but absent a statement from a childcare expert or some other substantial evidence, Plaintiff has not made the "clear showing" of irreparable harm required for the extraordinary remedy of prospective relief. *Winter*, 555 U.S. at 22 (citing *Mazurek*, 520 U.S. at 972). Similarly, compensatory services and education may or may not suffice to make Plaintiff whole for any harm he suffers while attending school four days per week, but the Court has no evidence on which to base a conclusion. As Plaintiff is receiving substantial services, and has not provided any particular evidence as to how he will fare under the current circumstances, the Court finds that Plaintiff is not likely to suffer irreparable harm if not granted a TRO.

### 3. Balance of Equities

Defendant argues that Plaintiff brought his due process complaint and this motion with unclean hands, alleging that Plaintiff has incorrectly represented that he is a resident of Kern County, California and is a student in Delano Union School District. Doc. 10 at 9. Defendant asserts that Plaintiff has either made misleading representations about his residency or has engaged in gamesmanship, and that the balance of equities does not tip in Plaintiff's favor. Plaintiff contests Defendant's position, and states that, contrary to Defendant's arguments, Plaintiff and his family have not sought to "rig" his enrollment and have been open and frank with Defendant about Plaintiff's enrollment and residency. Doc. 12 at 10-11.

Reviewing the administrative record, it is apparent that Defendant was aware that Plaintiff intended to live with relatives in Delano rather than his father at the time of the first IEP meeting between Plaintiff and Defendant on July 13, 2016. *See* Doc. 5-3 at 62 (listing Manuel Agbalog and Romeo Agblaog as Plaintiff's parent or guardian). Defendant also received caregiver authorization affidavits before the school year began from Plaintiff's grandmother and uncle, who both lived in Delano. Doc. 5-7 at 4-7. Moreover, Plaintiff included in his due process complaint, filed October 12,

2016, a statement that "[f]earing for [Plaintiff's] safety the family enrolled [him] in school elsewhere until their dispute could be resolved through due process." Doc. 5-12 at 5.  There is no argument that Plaintiff is not a resident within Delano Union School District, and he apparently remains enrolled in the district.  Defendant had ample notice that Plaintiff was relocating to Delano in order to receive additional support from family members.  Defendant was also made aware at least by the date of the due process complaint that Plaintiff was enrolled at and attending another school.  The evidence of "gamesmanship" is limited to the fact that Plaintiff is receiving an education elsewhere for the time being rather than remaining in Delano.  On this slim rationale, there is no basis on which to conclude that Plaintiff seeks this equitable relief with unclean hands.

As discussed, Plaintiff and Plaintiff's family are currently undergoing hardship as they shuttle Plaintiff between Delano and Torrance. Moreover, for so long as the current situation continues, Plaintiff will miss one day per week of school in addition to undergoing the hardship of his commute and dual residency. For these reasons, the Court finds that the balance of equities favors Plaintiff. Nonetheless, due to the voluntary actions of Plaintiff's father, the nature of the harm is not the type of emergency which would justify use of the extraordinary remedy of a TRO.

**4.     Public Interest**

Plaintiff contends that the interest of the public lies in protecting disabled children from changing educational circumstances. Doc. 5-1 at 15.  He argues that case law, and the Congressional decision to provide for an automatic stay in the IDEA, recognizes the risk of premature changes in a student's placement. *Id*.; Doc. 12 at 12.  While it acknowledges the importance of the stay-put provision, Defendant argues that, since Plaintiff is enrolled at a Torrance school, the public interest in avoiding unnecessary burdens on schools is not served here by a TRO.  Doc. 10 at 9-10.

Plaintiff has the stronger argument.  The public interest in protecting the limited budgets of school districts does not outweigh the public's interest in seeing that disabled children are educated. The choice to enact the stay-put provision in the IDEA "evidences Congress's sense that there is a

heightened risk of irreparable harm inherent in the premature removal of a disabled child to a potentially inappropriate educational setting." *Joshua A.*, 559 F.3d at 1040. This consideration applies here even though Plaintiff is enrolled in school and receiving services. Parents should not have to face a choice "between leaving their children in an education setting which potentially fails to meet minimum legal standards, and placing the child in private school at their own cost." *Id*. While Plaintiff's father did not appear to have considered private school in Delano as an option, he was faced with a substantially similar choice between the potentially adequate services offered by Defendant and the burdensome prospect of splitting Plaintiff's time between Torrance and Delano in order to obtain the education and services Plaintiff needs. Additionally, courts have found the public interest to not favor a stay-put injunction primarily in cases where a district-wide policy change is at issue rather than the impact of a single student requiring additional services. *See*, *e.g.*, *N.D.*, 600 F.3d at 1113 (holding that the district court properly found that the public interest did not particularly favor disabled students where the district faced the potentially increased class sizes as a result of layoffs if it did not reduce the school week by one day). Considering the policy considerations which underlie Congress's enactment of the IDEA and inclusion of the stay-put provision, and the relatively minor potential disruption to Defendant of providing services to Plaintiff, the Court finds that the public interest weighs in favor of injunctive relief.

## VI. CONCLUSION AND ORDER

While Plaintiff has shown that he is likely to prevail on the merits, and that both the balance of equities and the public interest weigh in his favor, he has not shown that, under the circumstances as the Court understands them to be, Plaintiff is likely to suffer irreparable harm if he is not granted a TRO at this time. The Court recognizes the irony of this situation. Had Plaintiff's father not begun voluntarily shuttling his child to some classes in Torrance, and kept Plaintiff out of school and living in Delano full time, a TRO would likely be warranted. Plaintiff, however, has not, at this time, made the clear showing of likely irreparable harm which would necessitate the extraordinary remedy of a TRO under either the

*Winter* test or the Ninth Circuit's "serious questions" evaluation. Consequently, Plaintiff's motion for a temporary restraining order is DENIED.

However, on the present record, the Court believes it is imperative to set this matter up for a full hearing on Plaintiff's request for a preliminary injunction. The Court recognizes that the current state of affairs is a significant hardship on Plaintiff. The parties are therefore directed to meet and confer regarding a schedule for further briefing on the request for a preliminary injunction. On or before noon on Wednesday, December 21, 2016, the parties shall submit to the court a schedule for further briefing and declare whether they intend to submit the matter on the papers or request a hearing. If a hearing is requested, the parties shall additionally propose three mutually agreeable dates for the hearing. The parties may communicate the above information to the Court informally by calling chambers at 559-499-5680.

IT IS SO ORDERED.

Dated:  **December 19, 2016**            /s/ Lawrence J. O'Neill
                                         UNITED STATES CHIEF DISTRICT JUDGE