UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **R.F., a minor, by his Guardian Ad Litem, SEAN FRANKEL,**<br><br>**Plaintiff,**<br><br>v.<br><br>**DELANO UNION SCHOOL DISTRICT,**<br><br>**Defendant.** | 1:16-cv-01796-LJO-JLT<br><br>**MEMORANDUM DECISION AND ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION(Doc. 18); ORDER TO SHOW CAUSE RE DISMISSAL** |

## I. INTRODUCTION

Plaintiff R.F., a minor, brings this action against Defendant Delano Union School District under the Individuals with Disabilities Education Act ("IDEA"). Plaintiff seeks a preliminary injunction compelling Defendant to provide behavioral and educational services consistent with Plaintiff's most recent implemented Individualized Education Program ("IEP") developed while he attended school in the Torrance Unified School District. Defendant objects, arguing that Plaintiff's case is moot because Defendant is not the responsible local educational agency ("LEA") for Plaintiff and, in the alternative, Plaintiff has not made the requisite showing of irreparable harm. For the reasons explained below, Plaintiff's motion for preliminary injunction is DENIED on the ground that Plaintiff cannot show likelihood of success on the merits because his claim is moot.

## II. BACKGROUND

Plaintiff's motion incorporates documents previously filed in connection with Plaintiff's motion for temporary restraining order. Doc. 18 at 2. Plaintiff also filed updated declarations of Sean Frankel, Plaintiff's father, and Dr. Daniel Shabani, who provides Plaintiff with behavior intervention services.

1

Docs. 18-2, 18-3. Defendant's opposition is supported by the declarations of Wendy Terrazas, Director of Student Services for Delano Union School District, and Jason Kashwer, Director of Special Education for Delano Union School District. Docs. 19-1, 19-2. The following facts are drawn from the filing in this matter and in the prior motion for temporary restraining order.

Plaintiff, who is 12 years old, has autism, an intellectual disability, and a speech and language disorder. Doc. 5-1 at 5. He is non-verbal. Doc. 18-2 at 2. Plaintiff's education goals and behavioral intervention plan address the following behaviors:

> Hand and object mouthing of substances, including non-edible objects;
> disruptions including throwing items, elopement, flopping down on the
> floor, hitting, reaching inside his pants, spitting, and grabbing with force
> the clothing of others.

Doc. 5-1 at 5. Plaintiff has had an IEP since September 7, 2007. *Id*. While Plaintiff was attending school in Torrance, his mother passed away. *Id*. Plaintiff's father decided to move Plaintiff to Delano, where Plaintiff's grandmother and uncle live and can provide additional childcare support; Doc. 5-7 at 2. *Id*. Plaintiff's uncle and grandmother each signed a caregiver education and medical care authorization affidavit for Plaintiff. Doc. 19-2 at 1; Doc. 5-7 at 4-6. In June 2016, Plaintiff began living with his grandmother in Delano for several days each week. Doc. 5-7 at 2. Plaintiff's last IEPs agreed upon and implemented before he left Torrance Unified School District, were dated May 5 and June 3, 2016. Doc. 5-1 at 5. These IEPs provided Plaintiff with a 1:1 aide for 1950 minutes per week and with supervision for 720 minutes per month from a Board Certified Behavior Analyst ("BCBA"). *Id*.

Plaintiff enrolled in Delano Union School District on June 17, 2016. *Id*. at 6. Defendant held IEP meetings on July 13 and August 5, 2016. *Id*. Defendant's proposed IEP considerably reduced Plaintiff's services. *Id*. Plaintiff's family argued that the reduction in services would harm Plaintiff, and asked that Defendant continue to provide the services which had been in place at Torrance Unified School District. Doc. 5-1 at 6. After rejecting Defendant's proposed IEP, Plaintiff re-enrolled at

Torrance Unified School District, where he is currently enrolled. Doc. 10 at 2; Doc 22 at 2.

Defendant attempted to provide transportation to Plaintiff at his address in Delano at the start of the 2016-2017 academic year. Doc. 19-2 at 2. On October 27, 2016, Mr. Kashwer learned that Plaintiff was enrolled and attending classes at Calle Mayor School in Torrance Unified School District. *Id*. Defendant subsequently ended Plaintiff's enrollment. *Id*. On December 1, 2016, Plaintiff was conditionally re-enrolled as a student in Delano Union School District, pending proof of residency. Doc. 19-1 at 1. On that same day, Ms. Terrazas contacted Torrance Unified School District, which refused to provide her with Plaintiff's educational records because Plaintiff was enrolled at and attending school in Torrance. *Id*. at 1-2. Defendant subsequently refused to enroll Plaintiff. *Id*. at 2. Plaintiff has never attended classes at any Delano Union School District school. Doc. 19-2 at 2.

Since the start of the 2016-2017 school year, Plaintiff has attended school in Torrance four days per week. Doc. 5-5 at 7; Doc. 10 at 8. Plaintiff lives with his father in Torrance Sunday night through Thursday afternoon. Doc. 18-2 at 2. Plaintiff's grandmother spends the week in Torrance to help care for Plaintiff. *Id*. at 4. On Thursday afternoons, Plaintiff leaves school early in order to be driven to Delano, where he stays with his grandmother, and is driven back to Torrance on Sunday night. *Id*. at 2. Plaintiff's father intends for Plaintiff to reside and attend school in Delano full time if Defendant provides services similar to those outlined in the Torrance Unified School District IEP. Doc. 5-7 at 2-3.

Plaintiff's father stated that, on days following transitions between Delano and Torrance, Plaintiff is noticeably more anxious, non-compliant, aggressive, and withdrawn from social interaction. Doc. 18-2 at 2. During the drive from Torrance to Delano, Plaintiff often attempts to open a child-proofed car door, refuses to exit the car during breaks resulting in bathroom accidents, forcefully taps car windows and doors, and attempts to escape from his seatbelt. *Id*. at 2-3. He does not exhibit these behaviors when riding in cars at other times. *Id*. On days after the drive to Delano, Plaintiff is moody, withdrawn, agitated, and appears uncomfortable. *Id*. at 3. Plaintiff often cries and is inconsolable. *Id*. at 2-3. This behavior ends after a period and Plaintiff returns to his normal mood. *Id*. at 4. The regular

commute is also difficult for Plaintiff's father, who misses several hours of work each week, and Plaintiff's grandmother, who is unable to keep doctor's appointments or see family and friends in Delano. *Id*. at 4-5.

Plaintiff filed a due process hearing request with the California Office of Administrative Hearings ("OAH") on October 13, 2016. Doc. 5-1 at 6. The due process hearing is scheduled for February 21, 2017. Doc. 1 at 7. Plaintiff filed a motion for stay-put on October 26, 2016, which OAH denied on November 11. Doc. 5-1 at 6.

On November 28, 2016, Plaintiff filed with this Court a complaint seeking declaratory and injunctive relief from the stay-put decision. Doc. 1. On November 29, 2016, Plaintiff filed a motion seeking a temporary restraining order, which the Court denied on December 19, 2016. Doc. 14. On December 30, 2016, Plaintiff filed the instant motion. Doc. 18. Defendant filed an opposition on January 17, 2017. Doc. 19. Plaintiff filed his reply on January 24, 2016. Doc. 20. The parties subsequently agreed to submit the matter on the papers. Doc. 23. Plaintiff seeks an injunction compelling Defendant to treat his implemented Torrance IEP as Plaintiff's stay put placement. Doc. 18-1 at 7.

### III. STANDARD OF DECISION

The standard for injunctive relief in an IDEA stay put case is the "traditional preliminary injunction analysis."[1] *Johnson ex rel. Johnson v. Special Educ. Hearing Office*, 287 F.3d 1176, 1180 (9th Cir. 2002). In order to merit entry of a preliminary injunction, a plaintiff must establish that: (1) he

---

[1] In the Court's previous order denying Plaintiff's request for a temporary restraining order, the Court found that 20 U.S.C. § 1415(j) did not mandate an automatic injunction under the circumstances and the familiar four-factor test applied. Doc. 14 at 7 n. 3. That ruling was without prejudice to further briefing on the issue. *Id*. Although the parties again raise the issue of whether an automatic injunction is warranted in connection with the pending request for a preliminary injunction, the Court declines to address further the matter. As Plaintiff's claim is moot, his request for a preliminary injunction must be denied under either the four-factor test or the alternative approach advanced by Plaintiff.

or she is likely to succeed on the merits; (2) he or she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his or her favor; and (4) an injunction is in the public interest. *Winter v. Nat Res. Def. Counsel, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit follows a version of the "sliding scale" approach to preliminary injunctions which it has labeled the "serious questions" test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the serious questions test, a strong showing of hardship to the plaintiff might "offset a lesser showing of likelihood of success on the merits" so long as serious questions are raised as to the merits, there is a likelihood of irreparable injury, and the injunction is in the public interest. *Id*. at 1134-35. A TRO or preliminary injunction is an extraordinary remedy, and is never awarded as a matter of right but only "upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22.

## IV. ANALYSIS

**A.    IDEA**

The IDEA provides federal funds to help state and local agencies educate children with disabilities while conditioning the funds on compliance with specific goals and procedures, primarily the obligation to provide a free appropriate public education ("FAPE"). 20 U.S.C. § 1412; *Board of Educ. of Hendrik Hudson Cent. Sch. Dist. v. Rowley*, 458 U.S. 176, 179-80 (1982) (describing the genesis and primary provisions of IDEA). Under the IDEA, "[a]ny party aggrieved by the findings and decision made [by the hearings officer] . . . shall have the right to bring a civil action with respect to the complaint presented . . . which action may be brought . . . in a district court of the United States." 20 U.S.C. § 1415(i)(2)(A). Among the procedures mandated by the IDEA is the development of a written IEP for each child with a disability. 20 U.S.C. § 1401. The IEP is crafted to meet the unique needs of each child with a disability by a team that includes a representative of the local educational agency, the child's teacher and parents, and, when appropriate, the child. 20 U.S.C § 1414(a)(5).

The parents or guardians of a child protected by the IDEA may file a due process complaint challenging "any matter relating to the identification, evaluation, or educational placement of the child,

or the provision of a [FAPE] to such child." 20 U.S.C. § 1313(b)(6); *see* Cal. Educ. Code § 56501. The stay-put provision of the IDEA mandates that, while a due process challenge is pending, a child is entitled to remain in his or her "then-current educational placement" unless the parents and the state or local education agency otherwise agree. 20 U.S.C. § 1415(j). A stay-put order issued at the administrative level is a collateral order subject to interlocutory appeal. *A.D. ex rel. L.D. v. Hawaii Dept. of Educ.*, 727 F.3d 911, 913 (2013).

**B.** **Defendant's Responsibility for Plaintiff's FAPE**

Defendant argues that it is not the local educational agency ("LEA")[2] responsible for Plaintiff's education. Doc. 19 at 6. While Defendant concedes that Plaintiff is eligible to enroll in either Torrance Unified School District or Delano Union School District, it contends that Plaintiff's active enrollment in and attendance at Torrance Unified School District and part-time abode in Torrance establish that Plaintiff is a Torrance resident. Doc. 19 at 11. Since only one LEA at a time is responsible for the education of a child, Defendant asserts that it cannot be compelled to provide Plaintiff with an education, and the Court lacks jurisdiction to enter a preliminary injunction. Doc. 19 at 6. Plaintiff argues that he is not seeking dual enrollment and needs to have an acceptable IEP in place before he begins attending classes at Delano Union School District. Doc. 20 at 1-2. He asserts that he lives with his grandmother in Delano from Thursday to Sunday, which establishes his residence for the purpose of school enrollment. Doc. 20 at 2-3. Defendant, therefore, is responsible for providing a FAPE to Plaintiff.

Delano's argument poses two questions. First, is Plaintiff a resident of Delano for the purpose of

---

[2] LEA, as defined in the IDEA, "means a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district, or other political subdivision of a state." 20 U.S.C. § 1401(19). In California, a LEA is "a school district, a county office of education, a nonprofit charter school participating as a member of a special education local plan area, or a special education local plan area." Cal. Educ. Code § 56026.3.

receiving a FAPE? Second, if Plaintiff is not currently a resident of Delano for the purpose of receiving an education, is this matter moot?

### 1.     **Plaintiff's District of Residence**

The IDEA creates uniform procedural obligations which are to be fulfilled according to the state's methods. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist.*, 458 U.S. at 208 ("[O]nce a court determines that the requirements of the Act have been met, questions of methodology are for resolution by the States."); *Los Angeles Unified Sch. Dist. v. Garcia*, 58 Cal. 4th 175, 184 (2013) ("The IDEA likewise leaves it to the states to decide how they will allocate among the various state and local public agencies the responsibility for providing, and funding, special education programs."). The IDEA does not dictate "which district or agency within a state must assume financial liability for special education services," specifying only that a state must "provide a free appropriate public education to children with disabilities 'residing in the State.'" *Manchester Sch. Dist. v. Crisman*, 306 F.3d 1, 10 (1st Cir. 2002) (quoting 20 U.S.C. § 1412(a)(1)(A)). "Each state is responsible for ensuring compliance with the IDEA and must specify which state or local educational agency (SEA or LEA) is responsible for providing special education services to certain students." *Los Angeles Unified Sch. Dist. v. Garcia*, 669 F.3d 956, 960 (9th Cir. 2012).

Outside the context of the IDEA, § 48200 of the California Education Code requires that "[e]ach person between the ages of 6 and 18 . . . shall attend the public full-time day school . . . for the full time designated as the length of the school day by the governing board of the school district in which the residency of either the parent or the legal guardian is located." California courts read § 48200 as "strongly implying—though not directly stating—that the proper school district for enrollment is that 'in which the [child's parent's] residence is located.'" *Katz v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 117 Cal. App. 4th 47, 61 (2004) (quoting Cal. Educ. Code. § 48200). Accordingly, "the school district responsible for the education of a child between the ages of six and 18 is the district in which the child's parent or legal guardian resides." *Orange Cnty. Dep't of Educ. v. Cal. Dep't of Educ.*, 668 F.3d

1052, 1056 (9th Cir. 2011). Except where specific exceptions apply, the same determination applies for special education or FAPE purposes. *Los Angeles Unified Sch. Dist.*, 58 Cal. 4th at 186-87 (citing *Union Sch. Dist. v. Smith*, 15 F.3d 1512, 1525 n. 1 (9th Cir. 1994)). The terms "parent" and "legal guardian" are not defined for the purpose of § 48200. Parent, as defined in the sub-part of the California Education Code concerning special education programs, includes "[a] biological or adoptive parent of a child" as well as "[a]n individual acting in the place of a biological or adoptive parent, including a grandparent, stepparent, or other relative, with whom the child lives, or an individual who is legally responsible for the child's welfare." Cal. Educ. Code § 56028(a)(1), (4); *see Orange Cnty. Dep't of Educ.*, 668 F.3d at 1056 ("[T]he definition of parent in [§] 56028 indisputably applies to [§] 48200, at least under some circumstances."). When more than one person qualifies to act as a parent to a child under § 56028, the biological or adoptive parent is presumed to have the authority to act as the parent. Cal. Educ. Code § 56028(b)(1).

Determining which LEA is responsible for providing a FAPE to a given child, then, is primarily a determination of residence. The determination of residence in an IDEA dispute is the same as the ordinary determination under state law. *Union Sch. Dist.*, 15 F.3d at 1525 (applying California state law as the "ordinary measure of residency"); *J.S. v. Shoreline Sch. Dist.*, 220 F. Supp. 2d 1175, 1191-92 (W.D. Wash. 2002) (finding that residency for the purposes of the IDEA is determined by state law). The Ninth Circuit has rejected arguments that the physical location of a child during the school week determines the residency of that child. *Union Sch. Dist.*, 15 F.3d at 1525. The California Government Code § 244 provides that "[t]here can only be one residence," "[a] residence cannot be lost until another is gained," and "[t]he residence of the parent with whom an unmarried minor child maintains his or her place of abode is the residence of such unmarried minor child." Cal. Gov. Code § 244(b)-(d). Likewise, the California Welfare and Institutions Code states that "[t]he residence of the parent with whom the child maintains his or her place of abode or the residence of any individual who has been appointed legal guardian . . . determines the residence of the child." Cal. Welf. & Inst. Code § 17.1(a). A "residence

can be changed only by the union of act and intent," which, in the case of an unmarried minor child, requires the act and intent of a parent or legal guardian. Cal. Gov. Code § 244(f); *Nw. Nat'l Cas. Co. v. Davis*, 90 Cal. App. 3d 782, 785 (1979) (holding that a minor may not acquire a new residence except through the actions of his or her parents). To change a residence, "there must be a concurrence in the act of abandonment of one residence with the intent to establish a new residence elsewhere." *Eriksen v. Eriksen*, 57 Cal. App. 2d 532, 534-35 (1943). Two elements are "indispensable to accomplishing a change of domicile: actual residence in the new locality plus the intent to remain there." *DeMiglio v. Mashore*, 4 Cal. App. 4th 1260, 1268 (1992).

The filings indicate that Plaintiff's father intended Plaintiff to reside in Delano prior to the start of the 2016-2017 school year. Plaintiff's uncle and grandmother both signed affidavits asserting that Plaintiff lived in their homes.[3] In June 2016, Plaintiff began living part time in Delano with his grandmother. After the dispute arose regarding Plaintiff's IEP and the services which Defendant was to provide, Plaintiff's father enrolled him in school in Torrance Unified School District. Since the start of the 2016-2017 school year, Plaintiff has lived for half of the week or more in Torrance with his father. Plaintiff's father intends for Plaintiff to live in Delano full-time if Defendant offers Plaintiff a suitable IEP.

These facts indicate that, at the time of Plaintiff's enrollment at Delano Union School District in June 2016, Plaintiff's father intended that Delano become Plaintiff's residence. Plaintiff was enrolled in Delano Union School District, IEP meetings began, and Plaintiff's family prepared caregiver authorization affidavits. Plaintiff resided several days each week with his grandmother. Defendant does not dispute that Plaintiff moved to Delano in June 2016. Doc. 19 at 10.

After the dispute developed regarding Plaintiff's IEP, however, Plaintiff's father enrolled him in

---

[3] Plaintiff's uncle and grandmother each signed an affidavit asserting that Plaintiff lived with him or her. The affidavits list different addresses in Delano. Doc. 5-7 at 4-6.

9

Torrance Unified School District for the 2016-2017 school year and Plaintiff started living with his father in Torrance for half or more of the week. "Where a person has two dwellings in different places and resides a part of his time in one place and a part of the time in another alternatively, the question which of the two places is his legal residence is almost altogether a question of his intent." *Chambers v. Hathaway*, 187 Cal. 104, 105 (1921). Two elements are "indispensable to accomplishing a change of domicile: actual residence in the new locality plus the intent to remain there." *DeMiglio*, 4 Cal. App. 4th at 1268. By housing Plaintiff in Torrance, Plaintiff's father has accomplished the act required to establish residence. By enrolling him in Torrance Unified School District and through his statements, Plaintiff's father has demonstrated his intent that Plaintiff reside in Torrance. Plaintiff's father stated that he intended Plaintiff to continue living in Torrance until Delano Union School District provides suitable services. Doc. 5-7 at 2-3. This open-ended statement shows a present intent for Plaintiff to reside in Torrance, not Delano. The statement suggests that, if Plaintiff were found not to be entitled to the services he seeks, he would remain in Torrance indefinitely. Plaintiff's father intends that Plaintiff permanently reside in Delano only in the event that a future event occurs, and otherwise that he remain in Torrance. Therefore, the "union of act and intent" to reside in Torrance has been satisfied and Plaintiff's residence is in Torrance.

Plaintiff contends that, even though he is attending school in Torrance, he satisfies the residency requirement to attend school in Delano due to his part-time residence with his grandmother. Doc. 20 at 2, 4. Plaintiff does not contend that his grandmother or uncle, both of whom are Delano residents, are his legal guardians. Instead, he argues that his grandmother and uncle signed affidavits attesting that Plaintiff resided with them, and that he satisfies the admission requirements in California Education Code § 48204. Doc. 20 at 3. Section 48204 provides in pertinent part that a child complies with the residency requirements for a district, § 48200 notwithstanding, if the child "lives in the home of a caregiving adult that is located within the boundaries of that school district." Cal. Educ. Code. § 48204(a)(5). A related section, California Family Code § 6550, sets forth the requirements for a

caregiver to enroll a minor in school through affidavit. Section 6550 permits a relative who completes and signs the affidavit provided in § 6552 of the California Family Code to enroll a child living with the relative in school in the district of the relative's residence and to exercise the same rights to authorize medical and dental care for the minor as a legal guardian. Cal. Fam. Code. § 6550(a).

To the extent that Plaintiff's uncle and grandmother acted in place of Plaintiff's father while he lived with them, both satisfied the definition of parent under California Education Code § 56028(4). The same section, however, specifies that when a biological parent attempts to act as a parent under the part of the Code dealing with special education, the biological parent is presumed to be the parent over any other party qualified to act as a parent. Cal. Educ. Code § 56028(b)(1). Since "there can be only one residence" for each individual, and an unmarried minor's place of residence is that of the parent with whom the unmarried minor maintains his place of abode, Cal. Gov. Code § 244(b), (d), Plaintiff's residence was with his father after his father acted as a parent by deciding Plaintiff should live and be educated in Torrance. *See Parent v. Fairfield Suisun Unified Sch. Dist.*, OAH Case No. 2010120551, at 9-10 (Cal. Office of Admin. Hearings, Aug. 30, 2011) (finding that a child's mother ended the child's residence with a caregiver by acting as a parent and making educational decisions). By making decisions which are fundamentally of the type a parent would make Plaintiff's father terminated the caregiver residency of Plaintiff's grandmother.

Moreover, the exception to the ordinary residency requirements found in § 48204 applies only to a "pupil who lives in the home of a caregiving adult." Cal. Educ. Code. § 48204(a)(5). The phrase "lives in" is not defined in the California Education Code, but its meaning is clear and ambiguous and needs no interpretation. *See Barnhard v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62 (2002); *Lungren v. Deukmejian*, 45 Cal. 3d 727, 735 (1988). As explained above, Plaintiff spends half or fewer of his nights in Delano, and his father intends that Plaintiff not attend Delano Union School District under the present circumstances. Plaintiff is instead enrolled at and attending school at Torrance Unified School District. Under these circumstances, Plaintiff cannot be said to "live in" his grandmother's home. Since

Plaintiff does not currently live in the Delano home of his grandmother, and there has been no argument or evidence that he lives in his uncle's home in Delano, the § 48204 exception does not apply.

For the foregoing reasons, under California law, Plaintiff is not a resident of Delano, and Delano Union School District has no responsibility to provide Plaintiff with a FAPE.

### 2. Mootness[4]

The question of mootness is a jurisdictional matter, and "a federal court always has jurisdiction to determine its own jurisdiction." *United States v. Ruiz*, 536 U.S. 622, 628 (2002). Because the question of mootness is jurisdictional, it can be raised at any time by any party. In IDEA cases, a party may raise facts rendering a case moot at any point, even if those facts were not raised during administrative proceedings. *See Honig v. Doe*, 484 U.S. 305, 318 (1988) (holding that a claim for relief under the Education of the Handicapped Act, IDEA's precursor, was mooted by a fact raised for the first time on appeal). "[A] case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *Powell v. McCormack*, 395 U.S. 486, 496 (1969). The question in deciding a mootness issue is "not whether the precise relief sought at the time the application for an injunction was filed is still available." *Sea-Land Serv., Inc. v. Int'l Longshoremen's and Warehousemen's Union*, 939 F.2d 866, 870 (9th Cir. 1991) (quoting *Northwest Envtl. Def. Ctr. v. Gordon*, 849 F.2d 1241, 1244-45 (9th Cir. 1988)). Rather, "[t]he question is whether there can be any effective relief." *Sea-Land Serv.*, 939 F.2d at 1244-45. In other words, if "changes in the circumstances that prevailed at the beginning of litigation have forestalled any occasion for meaningful relief," then the case is moot. *West v. Sec'y of the Dep't of Transp.*, 206 F.3d 920, 925 n. 4 (9th Cir. 2000) (quoting 13A Wright & Miller, *Federal Practice and Procedure* § 3533.3 at 268 (1984)). "Past exposure to illegal

---

[4] The Court addressed the question of mootness in its December 19, 2016, memorandum decision and order denying Plaintiff's motion for a temporary restraining order. Doc. 14. The Court found that the motion was not moot, in part because at the time it appeared that Plaintiff remained enrolled in Delano Union School District. Doc. 14 at 7.

conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974). Where a federal court cannot affect the litigants' rights, it has no jurisdiction to hear a case. *Allard v. DeLorean*, 884 F.2d 464, 466 (9th Cir. 1989).

Neither party has cited any case similar to the facts here, but courts have considered related issues in IDEA cases. Courts have found that a live controversy persists in IDEA disputes after a plaintiff relocated to another district when the plaintiff seeks reimbursement or compensatory education. *E.g. D.F. v. Collingswood Borough Bd. of Educ*, 694 F.3d 488, 497-98 (3d Cir. 2010) (holding that a move out of state does not render a claim for compensatory education moot because holding otherwise would permit a LEA to avoid "being held responsible for its past transgressions" and weaken the IDEA's protections). On the other hand, courts have held that claims seeking injunctive and declaratory relief are moot even if claims for compensatory education or reimbursement of private school tuition survive. *S.N. v. Old Bridge Tp. Bd. of Educ.*, Civil Action No. 04-517, 2006 WL 3333138, *2-3 (D.N.J. Nov. 15, 2006) (finding injunctive and declaratory relief claims against school district in New Jersey moot where student transferred to a school district in Missouri). Cases have also been found moot when the plaintiff graduated from the school system during the pendency of the litigation. *See*, *e.g.*, *Bd. of Educ. of Oak Park v. Nathan R.*, 199 F.3d 377, 381 (7th Cir. 2000).

For injunctive relief to be proper in this matter, which alleges an ongoing dispute regarding the provision of a FAPE subject to stay-put, there must be a current dispute with an entity obligated to provide a FAPE to Plaintiff. The preliminary injunction Plaintiff seeks here became unavailable when Plaintiff's residence became Torrance. *See S.N,.* 2006 WL 3333138 at *3 (finding that the IEP revision the plaintiffs sought "conclusively expired" when the plaintiffs moved out of state). Plaintiff, in responding to Defendant's arguments regarding funding, articulates the precise problem here when he states that "[a]ny order by this court should be contingent upon [Plaintiff] leaving Torrance for Delano." Doc. 20 at 6. If the Court were to enter a preliminary injunction here contingent on Plaintiff's leaving

13

Torrance, it would be an impermissible advisory opinion. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (federal courts do not have the power to render advisory opinions). Any preliminary injunction the Court could order here would have effect only if Plaintiff possessed Delano residency. As Plaintiff is not a current resident of Delano, Defendant has no ongoing obligation to provide him with a FAPE, and there is no live case or controversy. Therefore, the Court finds that Plaintiff's motion for preliminary injunction is moot, and must be denied.

The Court acknowledges that this creates a dilemma for Plaintiff and his family. While the State of California provides for parents to be reimbursed for the cost of enrolling a child at an appropriate private school if it is determined that the responsible LEA failed to make a FAPE available to the child, Cal. Educ. Code § 56175, California law makes no similar provision for a situation where a parent obtains public educational services for their child in another district, for the obvious reason that public education is free. The Court realizes that it is not within the means of every parent to pay the costs of enrollment at a private school pending resolution of an education dispute, and that in some regions there may not be appropriate private options. It is the place of the legislature, not the courts, however, to address this gap in coverage. While a reviewing court may "grant such relief as the court determines is appropriate" in an IDEA case, 20 U.S.C. § 1415(i)(2)(C)(iii), it may not render justiciable a dispute that is not a "case or controversy."

A federal court may dismiss an action on its own motion if it finds that it lacks subject matter jurisdiction over the action. *Fiedler v. Clark*, 714 F.2d 77, 78-79 (9th Cir. 1983) (noting that "a federal court may dismiss sua sponte if jurisdiction is lacking"); *see also* Fed. R. Civ. P. 12(h) (3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action."). [A]ll of the circumstances must be considered," however, in determining whether dismissal without notice is proper. *Scholastic Entm't, Inc. v. Fox Entm't Group, Inc.*, 336 F.3d 982, 985 (9th Cir. 2003) quoting *Cal. Diversified Promotions, Inc. v. Musick*, 505 F.2d 278, 280 (9th Cir. 1974)). A court may not dismiss an action without leave to amend unless it is clear that "the complaint could not be saved by

amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Plaintiff's Complaint only contains claims for declaratory and injunctive relief, and, for the reasons addressed above, these claims appear to be moot.

Accordingly, Plaintiff is ordered to show cause on or before March 7, 2017 why this case should not be dismissed for lack of subject matter jurisdiction. Upon the filling of Plaintiff's response, Defendant shall have 10 days to file its own response.

## V. CONCLUSION AND ORDER

As the Court finds that this matter is moot because Plaintiff is not a resident of Delano and Defendant is not the responsible LEA, there is no need to reach the merits of Plaintiff's motion. Consequently, Plaintiff's request for a preliminary injunction is DENIED.

Plaintiff is ordered to show cause on or before March 7, 2017 why this case should not be dismissed for lack of subject matter jurisdiction. Upon the filling of Plaintiff's response, Defendant shall have 10 days to file its own response.

IT IS SO ORDERED.

Dated: **February 15, 2017**     /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE